UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON J. ROBIDOUX, | * |
| Plaintiff, | * |
| v. | *  Civil Action No. 09-10020-JLT |
| MICHAEL MUHOLLAND and JAMES CORPORATION d/b/a JAMES CONSTRUCTION, | * |
| Defendants. | * |

MEMORANDUM

July 29, 2010

TAURO, J.

I. Introduction

Plaintiff Jason Robidoux brings this action against construction contractor James Corporation and superintendent Michael Muholland to recover for injuries allegedly caused by their negligent conduct. Presently at issue is Defendants' Motion for Summary Judgment [#17]. Because there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law, Defendants' Motion for Summary Judgment [#17] is ALLOWED.

II. Background

Plaintiff was hired by Northeast Temps d/b/a Labor Systems ("Labor Systems"), a temporary employment agency that contracts with employers to supply its employees as laborers.[1] Labor Systems is a Massachusetts corporation with its principal place of business in Massachusetts.[2]

---

[1] Affidavit of Ronald Turcotte, ¶3, Ex. B.
[2] Deposition of Ronald Turcotte, Ex. B, p. 11, lines 9-13.

Defendant James Corporation d/b/a James Construction ("James") is a Pennsylvania corporation specializing in construction contracting.[3] Defendant Michael Muholland served as superintendent of the construction site, operated by James, on which Plaintiff was injured.[4]

On August 22, 2006, James contracted with the United States Department of Navy to renovate the Dental Clinic Building located on the Newport Naval Station in Newport, Rhode Island.[5] In order to satisfy its labor requirements for this job, James called upon Labor Systems to provide temporary laborers. James contacted Labor Systems at an office with a phone number beginning with the area code 508.[6] James claims that its representatives did not know that the area code belonged to Massachusetts. But Plaintiff asserts that James knew Labor Systems operated principally in Massachusetts and that Plaintiff himself was a Massachusetts resident.[7]

James specifically requested Plaintiff, who was in the employ of Labor Systems, for the Newport project because Plaintiff previously worked for James in Rhode Island in May 2006 on a different project.[8] After James hired Plaintiff to work on the Newport project, James directed and controlled all aspects of Plaintiff's work.[9]

Neither party expected that Plaintiff would work for James in Massachusetts and Plaintiff never worked for James in Massachusetts.[10] Accordingly, James expected that federal law and Rhode Island law would apply to any issues related to the employment of its laborers in Rhode Island and, therefore, required Labor Systems to provide a Rhode Island certificate of Workers'

---

[3] Affidavit of Jamie Stevenson, ¶2, Ex. A.
[4] Id. at ¶16.
[5] Stevenson Aff., ¶¶3-4.
[6] Id. at ¶¶5-6.
[7] Id.; Turcotte Dep., Ex. B, p. 50-51; Affidavit of Jason Robidoux, ¶¶13-18.
[8] Stevenson Aff., at ¶8.
[9] Turcotte Aff., ¶17.
[10] Stevenson Aff., ¶¶9-10.

Compensation Insurance from Beacon Mutual Insurance ("Beacon").[11] In contrast, Plaintiff, a Massachusetts resident, states that he expected Massachusetts law to apply to issues related to his employment, based on the extraterritorial effect of the Massachusetts Workers' Compensation Act.[12]

Plaintiff was injured on January 4, 2007, while working under Muholland's direction at the Rhode Island construction site.[13] Plaintiff was working in an excavated trench on the site when Muholland tried to remove a 648 lb. vibratory compactor from the trench using a backhoe and a chain.[14] When the chain came loose, the compactor fell, crushing Plaintiff's left leg and causing him other bodily injury.[15] Plaintiff subsequently received weekly workers' compensation payments from Beacon, James' Rhode Island workers' compensation insurer, for approximately 17 weeks for a total of $10,248.15.[16] Plaintiff later filed a claim with the Massachusetts Department of Industrial Accidents, after which Labor Systems' Massachusetts workers' compensation insurance carrier took over his claim and provided higher monthly payments pursuant to Massachusetts law.[17]

III. Discussion

Plaintiff argues that Massachusetts law applies to this action and that, pursuant to Massachusetts law, he is permitted to proceed in this tort action against both James and Muholland. Defendants counter that Rhode Island law applies and that the Rhode Island

---

[11] Id.; Mem. Support. of Defs.' Mot. Summ. J., Ex. C, The Beacon Mutual Insurance Co. Certificate, Ex. C.
[12] Mem. Support. of Pl.'s Opp. Defs.' Mot. Summ. Judg., 9.
[13] Stevenson Aff., ¶20.
[14] Compl., 2 [#1].
[15] Id.
[16] Mem. Support. of Defs.' Mot. Summ. J., Ex. E, State of Rhode Island Report of Indemnity Payment, Memorandum of Agreement and Itemized Statement of Compensation.
[17] Mem. Support. of Defs.' Mot. Summ. J., Ex. F, Massachusetts Order of Payments §34.

...

Workers' Compensation Act bars Plaintiff's claims as a matter of law. This court agrees with Defendants.

    A.    Summary Judgment

Pursuant to Fed. Rule Civ. Pro. 56(a), summary judgment must issue when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[18] In granting a summary judgment motion, the court "must scrutinize the record in the light most favorable to the summary judgment loser and draw all reasonable inferences therefrom to that party's behoof."[19]

    B.    Choice-of-Law

"When facing a claim that does not arise under the Constitution or the laws of the United States, a federal court must apply the substantive law of the forum in which it sits, including the state's conflict-of-laws provisions."[20] This court, therefore, must apply Massachusetts choice-of-law principles to determine which state's law governs the claims at issue here.

With regard to tort cases such as this one, the Massachusetts Supreme Judicial Court has adopted a functional choice-of-law approach that seeks to respond to the interests of the parties, the states involved, and the interstate system as a whole.[21] The Supreme Judicial Court takes guidance in its choice-of-law determinations from the considerations set forth in the *Restatement (Second) of Conflict of Laws*. In general, Massachusetts law requires the court to apply the substantive law of the state with the most significant relationship to the transaction or occurrence and to the parties.[22]

---

[18] Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008).
[19] Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005).
[20] Dykes v. DePuy, Inc., 140 F.3d 31, 39 (1st Cir. 1998); see also Levin v. Dalva Brothers, Inc., 459 F.3d 68, 74 (1st Cir. 2006).
[21] Bushkin Assocs. v. Raytheon Co., 393 Mass. 622, 631 (1985).
[22] *Restatement (Second) Conflict of Laws* §§ 145, 188.

*Restatement (Second) of Conflict of Laws* § 6 sets forth the factors generally applicable to choice-of-law determinations.[23] These include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.[24] Specifically with respect to issues arising in tort, the *Restatement* provides that:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.[25]

Applying these factors to the present case, this court begins with the fact that Plaintiff's injury occurred in Rhode Island and the conduct causing the injury also clearly occurred in Rhode Island. Nonetheless, Plaintiff asserts that Rhode Island does not have a significant relationship to the occurrence because Plaintiff was injured on *federal property* within Rhode Island. 40 U.S.C. § 3172, however, makes clear that Congress intended that federal property within a state should

---

[23] See Bushkin Assocs., 393 Mass. at 632.

[24] Id. at § 6(2).

[25] *Restatement (Second) of Conflict of Laws,* § 145; see also Booten v. United States, 95 F.Supp. 2d 37, 44 (D. Mass 2000) (deciding a conflict-of-laws issue in favor of Rhode Island, the state where decedent's injury occurred, the tortious conduct causing the injury occurred, and where the relationship between the parties was centered). Plaintiff makes several arguments regarding his expectation that Massachusetts law would apply to him in light of the Massachusetts Workers' Compensation Act's extraterritorial effect. Given that this case involves workers' compensation benefits, Plaintiff advocates that this court should take account of the parties' expectations in determining which state's law to apply. See Saharceski v. Marcure, 366 N.E. 2d 1245, 1248 (Mass. 1977). In this case, however, the parties had utterly divergent expectations about which state's law should apply. Accordingly, though this court has taken note of the parties' expectations as to choice-of-law, these expectations add little value to this court's choice-of-law analysis.

be treated as property of that state for the purposes of applying workers' compensation laws.[26] Accordingly, the fact that Plaintiff was injured on federal property within Rhode Island does not change the import of the undisputed fact that Plaintiff's injury and the conduct causing it occurred in Rhode Island.

Similarly, with regard to where the parties' relationship was centered, the balance of factual elements weighs in favor of applying Rhode Island law. Plaintiff relies heavily on contacts between James and *Labor Systems* in an attempt to focus this court's attention on contacts that might provide a link between the parties and Massachusetts. Plaintiff asserts, for instance, that James should have seen the Massachusetts mailing addresses listed on Labor Systems paperwork. Plaintiff further states that Muholland had several conversations with him about the benefits of living in Massachusetts, thereby making both Muholland and James aware that Labor Systems and Plaintiff were connected to Massachusetts. Even assuming that these facts are true, however, Plaintiff has at most succeeded in demonstrating that the relationship between James and *Labor Systems* was centered in Massachusetts.

Importantly, the relationship between Defendants and Plaintiff—the relationship at issue in this tort action—was centered in Rhode Island. James called Labor Systems specifically to hire Plaintiff for work in Rhode Island as it had done in the past. Plaintiff worked for James solely in Rhode Island and neither Plaintiff nor Defendants expected that Plaintiff would work

---

[26] "The state authority charged with enforcing and requiring compliance with the state workers' compensation laws and with the orders, decisions, and awards of the authority may apply the laws to all land and premises in the State which the Federal Government owns or holds by deed or act of cession, and to all projects, buildings, constructions, improvements, and property in the State and belonging to the Government, in the same way and to the same extent as if the premises were under the exclusive jurisdiction of the State in which the land, premises, projects, buildings, constructions, improvements, or property are located." 40 U.S.C. § 3172(a); see also Travelers Ins. Co. v. Cardillo, 141 F.2d 362 (C.A.D.C. 1944) (finding that Congress intended to extend protective state-based workers' compensation to laborers injured or killed on federal property).

for James in Massachusetts. James and Muholland, not Labor Systems, were entirely responsible for managing Plaintiff's work. Plaintiff received checks for the work he did for James with Rhode Island taxes deducted.

Additionally, James required Labor Systems to provide a Rhode Island certificate of Workers' Compensation Insurance from Beacon Insurance because it was assumed that James' laborers working in Rhode Island would be covered by a Rhode Island carrier. Though James had contact with Labor Systems in Massachusetts, its *only contact with Plaintiff* occurred in Rhode Island. Indeed, as the foregoing demonstrates, the only connection between Plaintiff's tort claims and Massachusetts is that Plaintiff is domiciled in Massachusetts. On balance, it is clear that Rhode Island has a substantially more significant relationship to this litigation and, therefore, this court must apply Rhode Island law.

  C. <u>Application of Rhode Island's Workers' Compensation Act to Plaintiff's Claims Against James</u>[27]

The RI WCA provides the exclusive remedy for injured workers against their employers, unless a worker explicitly notifies his employer upon hiring that he does not waive his right of action at common law.[28]

The RI WCA subdivides the term "employer" into two categories—"special" employers and "general" employers. A "special employer" is "a person who contracts for services with a general employer for the use of an employee."[29] In contrast, the RI WCA defines "general employer" to include temporary help companies.[30] Importantly, the Supreme Court of Rhode Island has found that the term "employer" under the RI WCA includes both special employers

---

[27] Plaintiff presents no opposition to Defendants' conclusion that they will prevail if this court applies Rhode Island law and, therefore, Plaintiff implicitly concedes that issue.
[28] R.I. Gen. Laws § 28-36-17.
[29] R.I. Gen. Laws § 28-29-2(6)(ii).
[30] R.I. Gen. Laws § 28-29-2(6)(i).

7

and general employers, thereby granting both groups immunity from private action by injured employees.[31] James, the special employer in this case, leased Plaintiff from Labor Systems, Plaintiff's general employer. There is no evidence to suggest that Plaintiff retained his common law right of action as against Labor Systems or James. Accordingly, the Rhode Island Workers' Compensation Act (RI WCA) provides Plaintiff's exclusive remedy for the injuries he sustained and Plaintiff cannot proceed in this suit against James as a matter of law.

D.  Application of Rhode Island's Workers' Compensation Act to Plaintiff's Claims Against Muholland

In providing Plaintiff's exclusive remedy for injury, the RI WCA precludes him from suing his employer *or its employees*.[32] Indeed, the Supreme Court of Rhode Island has stated that "the exclusivity provisions of § 28-29-20 extinguish all other recovery rights based on the wrongful conduct of the injured employee's employer as well as that employer's employees."[33] James employed Muholland as a superintendent for the Rhode Island building project, and consequently, Muholland was James' employee. As this court stated above, James is also considered Plaintiff's employer under the RI WCA. Muholland and Plaintiff were, therefore, co-employees. Plaintiff was injured while both parties acted within the scope of their employment by James. Because the RI WCA immunized Muholland from suit by an injured co-employee such as Plaintiff, this court must dismiss Plaintiff's claim against Muholland as a matter of law.

---

[31] Sorenson v. Colibri Corp. Et al, 650 A.2d 125 (R.I. 1994).
[32] "The right to compensation for an injury under chapters 29-38 of this title, and the remedy for an injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, *or employees*." R.I. Gen. Laws § 28-29-20 [emphasis added].
[33] Boucher v. McGovern, et al., 639 A.2d 1369, 1375 (R.I. 1994) (finding that an injured employee cannot sue a co-employee for remedies in addition to the compensation afforded by the Rhode Island Workers' Compensation Act).

IV.     Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment [#17] on all negligence claims made by Plaintiff is ALLOWED.

AN ORDER HAS ISSUED.

/s/ 
United States District Judge